UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
 :
PATRICE SKELTON, :
 :
                              Plaintiff, :
 :       18-CV-8442 (VSB)
          - against - :
 :       **OPINION & ORDER**
 :
INTERNATIONAL UNION OF OPERATING :
ENGINEERS LOCAL 14-14B, AFL-CIO, :
 :
                             Defendant. :
 :
---------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2019

Appearances:

Michael Gerard O'Neill
New York, New York
*Counsel for Plaintiff*

James Michael Steinberg
Brady McGuire & Steinberg, P.C.
Tarrytown, New York

Joseph Harvey Green
Law Office of Joseph H. Green, PLLC
Tarrytown, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Patrice Skelton brings this action against Defendant International Union of Operating Engineers Local 14-14B, AFL-CIO ("Local 14" or the "Union"), asserting claims of discrimination on the basis of race in violation of the New York City Human Rights Law and the New York State Human Rights Law. Before me is Plaintiff's motion to remand this matter to the state court where it was originally filed. Because I find that Plaintiff's claims are not preempted,

either by § 301 of the Labor Management Relations Act ("LMRA") or by Local 14's duty of fair representation, Plaintiff's motion to remand is GRANTED.

I. **Background and Procedural History**

Plaintiff commenced this action by filing a Summons and Complaint in New York State Supreme Court, Bronx County, on June 29, 2017. (Compl.)[1] Plaintiff brings claims under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290, *et seq.*, alleging discrimination by labor union Local 14 on the basis of race. The Complaint does not include claims for discrimination under federal law.

Local 14 represents operators of heavy construction equipment, (Compl. ¶ 6), and negotiates collective bargaining agreements ("CBAs") with associations which represent groups of employers who perform construction work around New York City, (Def.'s Opp'n 3).[2] Plaintiff has been a member of Local 14 for many years. (Compl. ¶ 5.) Plaintiff, who is African American, contends that Local 14 discriminates against African-American union members in several respects. First, Plaintiff alleges that Local 14—which fills requests for union jobs throughout the city—regularly refers African-American members to shorter-term, lower-paying jobs than white members. (*Id.* ¶¶ 13–25.) Second, Plaintiff alleges that Local 14 rarely assigns African-American union members to fill the more senior position of "Master Mechanic," despite their being qualified for the role. (*Id.* ¶¶ 26–30.)

After filing his Complaint on June 29, 2017, Plaintiff did not serve the Complaint on Local 14 within the 120 days required by New York law. *See* N.Y. C.P.L.R. § 306-b. On

---

[1] "Compl." or "Complaint" refers to Plaintiff's June 29, 2017 Summons and Complaint. (Doc. 8-1.)

[2] "Def.'s Opp'n" refers to Defendant International Union of Operating Engineers Local 14-14B, AFL-CIO's Memorandum of Law in Opposition to Plaintiff's Motion to Remand, filed October 23, 2018. (Doc. 17.)

2

January 17, 2018, Local 14 filed a motion to dismiss the Complaint pursuant to N.Y. C.P.L.R. § 3211(a)(8) for lack of service. (Doc. 14.) Plaintiff cross-moved for an extension of time to effectuate service pursuant to N.Y. C.P.L.R. § 306-b. (*Id.*) On July 9, 2018, the New York State Supreme Court denied Local 14's motion to dismiss and granted Plaintiff's cross-motion for additional time to serve the Complaint. (Doc. 18.) Plaintiff served Local 14 with the Summons and Complaint on August 29, 2018. (Doc. 8.)

On September 18, 2018, Local 14 filed a notice of removal in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446. (*Id.*) In its notice of removal, Local 14 asserted that Plaintiff's claims are preempted because (1) resolution of Plaintiff's claims would require the Court to construe the terms of the relevant CBAs under § 301 of the LMRA, 29 U.S.C. § 185; and (2) Plaintiff's allegations of discrimination "implicate[] Local 14's duty of fair representation." (*Id.* ¶¶ 4–5.)

On October 9, 2018, Plaintiff filed a motion to remand the action to state court, (Doc. 13), along with a memorandum of law, (Doc. 15), and declaration, (Doc. 14), in support. On October 23, 2018, Local 14 filed a memorandum of law and affidavit in opposition, (Docs. 16–17), and on October 24, 2018, Plaintiff filed his reply, (Doc. 18–19). I am also in receipt of a notice of supplemental authority filed by Local 14 on April 8, 2019, (Doc. 20), and Plaintiff's reply thereto, (Doc. 21).

## II. Legal Standard

A defendant may remove a state court action to federal court if the plaintiff could have originally filed suit in federal court, based on either diversity or federal-question jurisdiction. *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the

defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Thus, a plaintiff may avoid federal jurisdiction by pleading only state law claims, even where federal claims are also available, and even if there is a federal defense." *Fax Telecommunicaciones Inc. v. AT & T*, 138 F.3d 479, 486 (2d Cir. 1998). Furthermore, "in light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (citation omitted); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." (citation omitted)).

However, there is an exception to the general rule that the plaintiff is "master of the claim." *Caterpillar Inc.*, 482 U.S. at 392. "[A] plaintiff cannot avoid removal by artful pleading, *i.e.*, by framing in terms of state law a complaint the real nature of which is federal, regardless of plaintiff's characterization . . . , or by omitting to plead necessary federal questions in a complaint." *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27–28 (2d Cir. 1988) (internal citations and quotation marks omitted). "The artful-pleading doctrine includes within it the doctrine of complete preemption." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). Thus, if a plaintiff "raises . . . a completely preempted state-law claim in his complaint, a

4

court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Id.*

On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citation omitted); *see also Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994) ("On a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." (citing *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979))).

## III. Discussion

### A. *Timeliness of Removal*

As a threshold matter, Plaintiff challenges the timeliness of Local 14's notice of removal. A defendant seeking removal of a civil action from state court must remove the case to federal court "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). In its decision in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), the Supreme Court clarified that the 30-day removal period "could only be triggered by formal service of process, regardless of whether the statutory phrase 'or otherwise' hints at some other proper means of receipt of the initial pleading." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 202 (2d Cir. 2001) (citing *Murphy Bros.*, 526 U.S. at 349–56). Here, Local 14 filed its notice of removal on September 18, 2018, within 30 days of the date of service of the Summons and Complaint (August 29, 2018). (Doc. 8.) Plaintiff argues that although "formal service . . . was not effected until August 29, 2018," Local 14's notice of removal was untimely filed because Local 14 had in fact received Plaintiff's Complaint by

5

January 2018, when Local 14 filed a motion to dismiss the Complaint in state court. (Pl.'s Br. 1.)[3]

Plaintiff cites *Burr ex rel. Burr v. Toyota Motor Credit Co.*, in support of his argument that Local 14's participation in state court litigation triggered the 30-day removal period; however, the defendant in *Burr* was found to have waived service by filing an answer to the complaint "that did not include any objection to the court's exercise of personal jurisdiction." 478 F. Supp. 2d 432, 439 (S.D.N.Y. 2006); *see also Mintz & Gold LLP v. Daibes*, No. 15 Civ. 1218(PAE), 2015 WL 2130935, at *6 (S.D.N.Y. May 6, 2015) (finding defendant had waived service where he "affirmatively litigated the issue of personal jurisdiction" in state court "without ever raising a challenge to the adequacy of service"), *aff'd*, 643 F. App'x 35 (2d Cir. 2016). *Burr* is inapposite. There is no credible argument that Local 14 waived service here. Not only did Local 14 refrain from filing an answer in state court, but the motion to dismiss that Local 14 filed was expressly predicated on Plaintiff's failure to effect proper service. (*See* Doc. 14 (moving to dismiss under N.Y. C.P.L.R. § 3211(a)(8) because "Local 14 has not been served with the Summons and Complaint").) Moreover, Plaintiff conceded that he had failed to properly serve the Union in his request for an order pursuant to N.Y. § C.P.L.R. 306-b extending the time to complete service. (*See id.* (explaining that "[d]ue to a miscommunication with [Plaintiff's counsel's] former associate, service was not effectuated").) Accordingly, because Local 14 did not waive service and was not properly served until August 29, 2018, its September 18, 2018 notice of removal was timely filed.

---

[3] "Pl.'s Br." refers to the Memorandum of Law in Support of Plaintiff's Motion to Remand, filed October 9, 2018. (Doc. 15.)

B. *Motion to Remand*

1. **Section 301 of the LMRA**

Local 14 first contends that Plaintiff's claims are preempted by § 301 of the LMRA. Plaintiff responds that there is no preemption here because his claims neither seek to enforce rights created by a CBA nor do they require interpretation of a CBA. I am persuaded by Plaintiff's legal reasoning, and find that Plaintiff has the better of the argument.

a. Applicable Law

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . , or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). It is well established that § 301 governs not only "claims founded directly on rights created by collective-bargaining agreements," but also "claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc.*, 482 U.S. at 394 (internal quotation marks omitted). Where resolution of a state law claim is "substantially dependent" upon or "inextricably intertwined" with analysis of the terms of a CBA, the state law claim "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985) (internal citation omitted); *see also id.* at 213 ("[S]tate-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements.").

On the other hand, where a plaintiff covered by a CBA asserts "legal rights independent of that agreement," preemption does not occur. *Caterpillar Inc.*, 482 U.S. at 396. A state law claim is "independent" when resolving it "does not require construing the collective-bargaining

7

agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). This rule ensures that § 301 is not "read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994); *see also Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 232, 235 (2d Cir. 1997) (state law negligent misrepresentation claims not preempted by § 301 because "[s]tate law—not the CBA—[was] the source of the rights asserted by [the] plaintiffs"). Importantly, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Allis-Chalmers*, 471 U.S. at 211. "That a court may need to *consult* the CBA in resolving the state law claim—to compute damages, for instance—does not subject that claim to preemption by § 301." *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206–07 (2d Cir. 2019); *accord Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001) (per curiam) ("simple reference to the face of the CBA" does not require preemption).

b. Application

Plaintiff's Complaint alleges that Local 14 discriminated against Plaintiff on the basis of his race—specifically, he alleges that on account of race, Local 14 (1) regularly assigned him to less desirable jobs than his white counterparts, and (2) denied him the opportunity to be employed as a Master Mechanic. (Compl. ¶¶ 13–30.) Plaintiff's right to be free from discrimination—as set forth in the relevant provisions of the NYSHRL and NYCHRL—plainly exists independently of the applicable CBAs. It is precisely the type of "nonnegotiable state-law right" that is not subject to preemption by § 301. *Allis-Chalmers*, 471 U.S. at 213.

In *Morrison v. International Union of Operating Engineers Local 14-14B*, the United States District Court for the Eastern District of New York undertook a preemption analysis with respect to virtually identical NYCHRL claims for racial discrimination against the same

8

defendant, Local 14. *See* No. 12-CV-301 (FB)(JO), 2014 WL 3563612 (E.D.N.Y. July 21, 2014). Remand was not at issue in *Morrison* because plaintiffs there had alleged federal discrimination claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, in addition to their NYCHRL claim; however, Local 14 moved for judgment on the pleadings on the ground that § 301 preempted plaintiffs' NYCHRL claims for race discrimination. *Id.* at *1–2. The *Morrison* court concluded that plaintiffs' claims were not preempted, explaining that plaintiffs sought "to vindicate rights conferred by the NYCHRL"—rights which "are independent of the CBAs." *Id.* at *3. In other words, "however the CBAs are interpreted, they cannot authorize Local 14 to violate the NYCHRL." *Id.* Here, as in *Morrison*, because Plaintiff's claims "involve[] rights independent of those created by" the CBAs in question, they are not preempted. *Id.* at *2.

The conclusion that § 301 does not preempt Plaintiff's claims is further bolstered by the fact that Local 14 has failed to demonstrate that resolution of Plaintiff's claims will require interpretation of the relevant CBAs. With respect to discrimination in Local 14's selection of Master Mechanics, although the CBAs detail the job responsibilities of a Master Mechanic, they appear to be silent as to the qualifications that a union member must possess in order to be eligible for the position. (*See* Def.'s Opp'n 8–10.)[4] The CBAs are also silent as to the process that the Union must follow in making job referrals. The gravamen of Plaintiff's claims is that Local 14 has treated him differently than white union members who are otherwise similarly situated. It is unnecessary to interpret the terms of the CBAs to confirm the truth of this assertion. At most, Plaintiff's claims implicate the CBAs only "tangentially," *Allis-Chalmers*,

---

[4] Local 14 contends that the CBAs "detail specific job responsibilities of a master mechanic," (Def.'s Opp'n 10), but fails to identify any qualifications for the position set forth in the CBAs.

9

471 U.S. at 211, which is insufficient to trigger preemption, *see Whitehurst*, 928 F.3d at 206–07 ("That a court may need to *consult* the CBA in resolving the state law claim . . . does not subject that claim to preemption by § 301.").

## 2. Duty of Fair Representation

Local 14 also argues that Plaintiff's claims are preempted by the Union's duty of fair representation. Applying the framework set forth by the Second Circuit in *Figueroa v. Foster*, 864 F.3d 222 (2d Cir. 2017), I disagree.

### a. Applicable Law

Pursuant to the National Labor Relations Act ("NLRA"), a union owes its members a "duty fairly to represent all [members] in its collective bargaining . . . and in its enforcement of the resulting collective bargaining agreement." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *see also id.* ("The statutory duty of fair representation was developed . . . in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, and was soon extended to unions certified under the N.L.R.A." (internal citations omitted)). This duty of fair representation ("DFR") imposes on the union an "obligation to serve the interests of all [union] members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* A union breaches the duty of fair representation where its actions toward a member are "arbitrary, discriminatory, or in bad faith." *Id.* at 190.

In *Figueroa v. Foster*, 864 F.3d 222, the Second Circuit rejected the contention that whenever a union acts in its representative capacity, the DFR preempts state discrimination claims under the NYSHRL. After observing that the NLRA does not expressly preempt the NYSHRL, *id.* at 226, and concluding that "there is not the kind of total field preemption that

10

would foreclose the NYSHRL from claims of discrimination filed by union members against a labor organization even when it is acting in its capacity as a collective bargaining agent," *id.* at 231–32, the *Figueroa* court conducted a thorough conflict preemption analysis. The court inquired as to (1) whether it is "impossible for a private party to comply with both the NLRA's duty of fair representation and the NYSHRL" (i.e., impossibility preemption), and (2) whether "the NYSHRL stands as an obstacle to the execution of Congress's intent as expressed in the NLRA's duty of fair representation" (i.e., obstacle preemption), and answered both questions in the negative. *Id.* at 232–36. The court identified "no evidence that the NLRA's duty of fair representation was designed or intended to preempt state laws focused on combatting invidious discrimination, such as the NYSHRL," *id.* at 233, and determined that "the NYSHRL serves the same purpose of prohibiting discrimination as does the NLRA's duty of fair representation," *id.* at 235. Finding no conflict between the NYSHRL's requirements and the requirements of the NLRA's duty of fair representation, the court concluded that the DFR does not "preempt[] the NYSHRL *in its entirety* when applied to unions acting in their capacity as collective bargaining agents." *Id*. "Instead, the NYSHRL (and by extension the NYCHRL) 'provide[s] union members with additional protections against invidious discrimination by their labor organizations.'" *Whitehurst v. Staten Island Univ. Hosp.*, No. 18-cv-1090 (ARR) (RER), 2018 WL 2744710, at *5 (E.D.N.Y. June 6, 2018) (quoting *Figueroa*, 864 F.3d at 224), *aff'd*, 928 F.3d 201.

      b.  Application

Local 14 correctly notes that *Figueroa* "d[id] not purport to address every potential conflict between the NYSHRL and federal law" and instead concluded only that "the NLRA's duty of fair representation does not preempt the NYSHRL either on the basis of field preemption

11

or *as a general matter* on the basis of conflict preemption." 864 F.3d at 235–36 (emphasis added). However, the fact that *Figueroa* does not foreclose the possibility that the DFR may preempt NYSHRL claims under certain circumstances in no way indicates that Plaintiff's claims are preempted here. To the contrary, I find that Plaintiff's claims fall squarely within the scope of *Figueroa*'s conflict preemption analysis.[5]

Plaintiff's claims present neither an "impossibility" conflict nor an "obstacle" conflict. With regard to impossibility preemption, Local 14 does not and cannot argue that it "could not comply with the federal duty of fair representation if it also complied with the [provisions of the NYCHRL and] NYSHRL" at issue here—that is, the prohibition of discrimination on the basis of race. *Id.* at 234 (internal quotation marks omitted). Similarly, there is no obstacle conflict because the anti-discrimination provisions of the NYCHRL and NYSHRL do not "pose[] an actual conflict with the overriding federal purpose and objective" of the NLRA's duty of fair representation. *Id.* at 234–35 (internal quotation marks omitted). Rather, "the two work in tandem to protect union members from invidious discrimination in all of its forms." *Id.* at 235.

Because there is no actual conflict between the obligations set forth in the applicable provisions of the NYSHRL and the NYCHRL and the requirements of Local 14's duty of fair representation, I conclude under the principles set forth in *Figueroa* that the DFR does not preempt Plaintiff's claims.

---

[5] I note that when the *Figueroa* court explained that its decision did not address "every potential conflict between the NYSHRL and federal law," it cited as an example of a still-open question the potential conflict between the six-month statute of limitations for DFR claims and the one-year statute of limitations for NYSHRL claims. *See* 864 F.3d at 235. That question of the effect of conflicting statutes of limitations is far removed from the core issues—presented both here and in *Figueroa*—of whether the DFR and the NYSHRL share compatible anti-discriminatory purposes and whether it is possible to simultaneously comply with both.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. The Clerk of Court is respectfully directed to remand this case to the New York State Supreme Court, Bronx County, terminate the motion pending at Docket Entry 13, and close the case.

SO ORDERED.

Dated: September 30, 2019
     New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge